UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| DAMARCUS ANTHONY THOMPSON, | Case No. 14-CV-05178-LHK |
| Petitioner, | **ORDER DENYING AMENDED PETITION FOR WRIT OF HABEAS CORPUS** |
| v. | |
| ROBERT W. FOX, Warden, | Re: Dkt. No. 14 |
| Respondent. | |

On September 6, 2011, Petitioner Demarcus Thompson ("Petitioner") was convicted by a jury of gross vehicular manslaughter, driving under the influence of alcohol and causing personal injury, and leaving the scene of an accident involving injury. Petitioner was sentenced to 16 years and 10 months of imprisonment. On August 28, 2015, Petitioner filed an amended petition for a writ of habeas corpus before this Court. ECF No. 14 ("Pet."). Having considered the submissions of the parties, the relevant law, and the underlying record, the Court DENIES the amended petition.

**I.    BACKGROUND**

### A. Factual Background[1]

On August 15, 2009, Petitioner was involved in an automobile accident in San Leandro, California. Exh. 8 at 4. The incident resulted in the death of one passenger and injuries to the other passengers. When police arrived at the scene of the accident, Petitioner was not present. *Id.* at 6. However, both a witness and responding police officer reported seeing someone walking with a limp from the crash site. *Id.* at 4–5. After the accident, an arrest warrant for Petitioner was issued, and Petitioner was apprehended in March 2011. *Id.* at 6 n.3.

On June 14, 2011, the Alameda County District Attorney filed an information charging Petitioner with gross vehicular manslaughter, driving under the influence of alcohol and causing personal injury, and leaving the scene of an accident involving injury. *Id.* at 2. At trial, the prosecution presented evidence that Petitioner, Petitioner's co-defendant Cheleia Swayne ("Swayne"), and other individuals were drinking on August 14, 2009. *Id.* at 2–3. At some point that night or in the early morning of August 15, 2009, Petitioner, Swayne, and the other passengers drove to pick up Jalisha Harris ("Harris") in Petitioner's Lexus. "When Harris came outside to be picked up, she saw the Lexus in the parking lot with the right rear passenger door open." *Id.* at 3. "The driver's seat was pushed all the way back and leaned so far back that no one could sit directly behind it in the back seat." *Id.* Petitioner sat in the driver's seat with Swayne on his lap. One individual, La'Camii Ross ("Ross") sat in the front passenger seat, and Harris sat next to another passenger, Everett Jackson ("Jackson") in the back seat.

At trial, Harris testified that she "did not have a clear recollection of whose hands"— Petitioner's or Swayne's—"were on the steering wheel and . . . whose feet were on the pedals." *Id.* Although Harris "recalled testifying previously that she saw Swayne's hands on the wheel," she explained at trial that "she had suffered memory loss and memory changes," and was uncertain as to whether Petitioner or Swayne had control of the Lexus. Nonetheless, Harris stated that she

---

[1] The following facts are drawn from the California Court of Appeal's opinion on Petitioner's direct appeal. ECF No. 20-2 (Exh. 8); *cf. Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003) ("Factual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary.").

remembered the vehicle traveling at "freeway speed." *Id.* Around 3 A.M. on August 15, 2009, Petitioner's vehicle crashed into a pole at [a] gas station" in San Leandro. *Id.* at 4. The crash resulted in the vehicle catching fire, with witnesses reporting "a lot of smoke in the car." *Id.* As a result of this accident, Swayne injured her right ankle, Harris suffered a broken neck and fractured hand, Jackson suffered a broken leg, and Ross died at the scene. *Id.* at 6–7.

In addition to various witness testimony, the prosecution also called forensic experts, police officers, and traffic investigators at trial. These individuals testified that Petitioner's vehicle was traveling significantly above the speed limit and that Swayne's blood alcohol level was above the legal limit. *Id.* at 7–8.

During Petitioner's trial, the court instructed the jury that Petitioner and Swayne, his co-defendant, could be found guilty in two ways. *Id.* at 9. First, the jury could find that Petitioner acted as the perpetrator of the crimes in question. *Id.* Alternatively, the jury could find that Petitioner acted as an aider or abettor. *Id.* For aiding and abetting liability, the prosecution needed to prove that:

> One, the perpetrator committed the crime; two, defendant knew that the perpetrator intended to commit the crime; three, before or during the commission of the crime, the defendant intended to aid and abet the perpetrator in committing the crime; and, four, the defendant's words or conduct did, in fact, aid and abet the perpetrator's commission of the crime.

*Id.* The state trial court further stated that the jury "need not unanimously agree . . . whether a [particular] defendant is an aider and abettor or a direct perpetrator." *Id.* at 6. The only requirement was that the jurors be "convinced of [a defendant's] guilt" as either an aider and abettor or as a perpetrator. *Id.*

After considering the foregoing evidence, the jury convicted Petitioner and Swayne of all counts on September 6, 2011. On October 21, 2011, the state trial court sentenced Petitioner to 20 years and 10 months of imprisonment, which as explained below was later reduced to 16 years and 10 months of imprisonment. *Id.* at 8.

**B. Procedural History**

3

Case No. 14-CV-05178-LHK
ORDER DENYING AMENDED PETITION FOR WRIT OF HABEAS CORPUS

On November 15, 2011, Petitioner timely appealed his conviction and sentence to the California Court of Appeal. On May 28, 2013, the California Court of Appeal affirmed Petitioner's conviction but remanded the case for resentencing. In the wake of the California Court of Appeal's decision, Petitioner filed a petition for review to the California Supreme Court. ECF No. 20-2 (Exh. 9). The California Supreme Court denied this petition on August 28, 2013. ECF No. 20-2 (Exh. 10). On October 18, 2013, Petitioner was resentenced to a term of 16 years and 10 months of imprisonment.

On November 21, 2014, Petitioner filed a petition for a writ of habeas corpus before this Court, which sought relief on three claims. ECF No. 1. Petitioner contended (1) that the state trial court "failed to adequately inform the jury of the necessary elements of the offense," (2) that there was "insufficient evidence to support [P]etitioner's conviction," and (3) that the prosecutor's arguments violated due process. *Id.* at 10.

Respondent moved to dismiss this petition on February 2, 2015. ECF No. 7. In lieu of responding to this motion, Petitioner filed a motion for leave to amend and a motion for a stay. ECF No. 8; ECF No. 9. The crux of both Respondent's motion to dismiss and Petitioner's motion to amend was that, of the three claims presented in Petitioner's original habeas petition, Petitioner's third claim—that the prosecutor's arguments violated due process—had not been exhausted in state court. Consequently, Petitioner's motion to amend sought to eliminate Petitioner's third, unexhausted claim for relief, and Petitioner's motion for a stay sought to stay federal habeas proceedings so that Petitioner could exhaust this claim in state court.

On July 29, 2015, the Court granted Petitioner's motion for leave to amend, denied as moot Respondent's motion to dismiss, and denied Petitioner's motion for a stay. ECF No. 13. On Petitioner's motion to stay, the Court concluded that Petitioner's unexhausted claim was "facially without merit" and that "granting . . . a stay would be inappropriate." *Id.* at 13.

Pursuant to the Court's July 29, 2015 order, Petitioner filed, on August 28, 2015, an amended petition for a writ of habeas corpus. This petition alleges (1) that the state trial court "failed to adequately inform the jury of the necessary elements of the offense," and (2) that

"[t]here was insufficient evidence to support [P]etitioner's convictions." Pet. at 8–9. Respondent answered the amended petition on November 19, 2015, and Petitioner filed a traverse on January 14, 2016. ECF No. 18 ("Answer"); ECF No. 23 ("Traverse").

## II. LEGAL STANDARD

Because Petitioner filed his original federal habeas petition in 2014, the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA") applies to the instant action. Pursuant to AEDPA, a federal court may grant habeas relief on a claim adjudicated on the merits in state court only if the state court's adjudication "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

### A. Contrary To or Unreasonable Application of Clearly Established Federal Law

As to 28 U.S.C. § 2254(d)(1), the "contrary to" and "unreasonable application" prongs have separate and distinct meanings. *Williams v. Taylor*, 529 U.S. 362, 404 (2000) ("Section 2254(d)(1) defines two categories of cases in which a state prisoner may obtain federal habeas relief with respect to a claim adjudicated on the merits in state court."). A state court's decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the U.S. Supreme Court] on a question of law or if the state court decides a case differently than [the U.S. Supreme Court] has on a set of materially indistinguishable facts." *Id*. at 412–13. A state court's decision is an "unreasonable application" of clearly established federal law if "the state court identifies the correct governing legal principle . . . but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. "[A]n *unreasonable* application of federal law is different from an *incorrect* application of federal law." *Harrington v. Richter*, 562 U.S. 86, 101 (2011). A state court's determination that a claim lacks merit is not unreasonable "so long as 'fairminded jurists could disagree' on [its] correctness." *Id.* (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

Holdings of the U.S. Supreme Court at the time of the state court decision are the sole

determinant of clearly established federal law.  *Williams*, 529 U.S. at 412.  Although a district court may "look to circuit precedent to ascertain whether [the circuit] has already held that the particular point in issue is clearly established by Supreme Court precedent," *Marshall v. Rodgers*, 133 S. Ct. 1446, 1450 (2013) (per curiam), "[c]ircuit precedent cannot refine or sharpen a general principle of [U.S.] Supreme Court jurisprudence into a specific legal rule," *Lopez v. Smith*, 135 S. Ct. 1, 4 (2014) (per curiam) (internal quotation marks omitted).

### B. Contrary To or Unreasonable Application of Clearly Established Federal Law

In order to find that a state court's decision was based on "an unreasonable determination of the facts," 28 U.S.C. § 2254(d)(2), a federal court "must be convinced that an appellate panel, applying the normal standards of appellate review, could not reasonably conclude that the finding is supported by the record before the state court," *Hurles v. Ryan*, 752 F.3d 768, 778 (9th Cir. 2014) (internal quotation marks omitted).  "[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Burt v. Titlow*, 134 S. Ct. 10, 15 (2013).  That said, "where the state courts plainly misapprehend or misstate the record in making their findings, and the misapprehension goes to a material factual issue that is central to petitioner's claim, that misapprehension can fatally undermine the fact-finding process, rendering the resulting factual finding unreasonable." *Taylor v. Maddox*, 366 F.3d 992, 1001 (9th Cir. 2004).

In examining whether a petitioner is entitled to relief under 28 U.S.C. § 2254(d)(1) or § 2254(d)(2), a federal court's review "is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).  In the event that a federal court "determine[s], considering only the evidence before the state court, that the adjudication of a claim on the merits resulted in a decision contrary to or involving an unreasonable application of clearly established federal law, or that the state court's decision was based on an unreasonable determination of the facts," the federal court evaluates the petitioner's claim *de novo*.  *Hurles*, 752 F.3d at 778.  If error is found, habeas relief is warranted if that error "had substantial and injurious effect or influence in determining the jury's verdict." *Brecht v.*

*Abrahamson*, 507 U.S. 619, 638 (1993). Petitioners "are not entitled to habeas relief based on trial error unless they can establish that it resulted in 'actual prejudice.'" *Id.* at 637 (quoting *United States v. Lane*, 474 U.S. 438, 449 (1986)).

### III.    DISCUSSION

Petitioner asserts two grounds for habeas relief. First, Petitioner contends that the state trial court erred in instructing the jury on the necessary elements of gross vehicular manslaughter. Second, Petitioner challenges the sufficiency of the evidence presented against him at trial. The Court addresses these grounds in turn.

#### A. Jury Instructions

Petitioner points to two specific instances of jury instruction error: (1) the failure of the state trial court to instruct the jury that "a passenger cannot aid and abet [gross vehicular manslaughter] unless, at some point in the ride, the passenger actually exerts physical control over the vehicle," and (2) the failure of the state trial court to give a pinpoint instruction that the jury must "find beyond a reasonable doubt that [Petitioner] was driving the vehicle at the time of the collision." Pet. at 13.

Petitioner presented his "aiding-and-abetting" argument before the California Court of Appeal on direct appeal. It does not appear, however, that Petitioner claimed on direct appeal or in his petition for review to the California Supreme Court that the state trial court's failure to give a pinpoint jury instruction was erroneous. Consequently, Petitioner's "pinpoint jury instruction" argument is unexhausted, and the normal course would be to require Petitioner to exhaust his claim in state court.

However, under 28 U.S.C. § 2254(b)(2), the Court may deny "[a]n application for a writ of habeas corpus . . . on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(2). In interpreting this provision, the Ninth Circuit has held that "a federal court may deny an unexhausted petition on the merits . . . when it is perfectly clear that the applicant does not raise even a colorable federal claim." *Cassett v. Stewart*, 406 F.3d 614, 624 (9th Cir. 2005).

In the instant case, Petitioner's "pinpoint jury instruction" argument substantially overlaps with Petitioner's "aiding-and-abetting" argument, which was exhausted. The crux of both arguments is that the jury should have been instructed to find that Petitioner drove or physically controlled the vehicle during the August 15, 2009 incident. Under *Cassett* and 28 U.S.C. § 2254(b)(2), it is "perfectly clear" that such arguments fail to "raise even a colorable federal claim." 406 F.3d at 624.

Indeed, as the California Court of Appeal explained, "to find a defendant guilty of aiding and abetting a crime, the jury must find that the perpetrator committed the crime, the defendant knew of the perpetrator's intent to commit the crime, the defendant intended to aid and abet, and the defendant's words or conduct did in fact aid, encourage, promote, facilitate, etc., the commission of the crime." Exh. 8 at 11. There is, according to the California Court of Appeal, "no authority for a specific requirement that aiding and abetting a driving offense requires the act of driving." *Id.* "This is not surprising in light of the fact that . . . an aider and abettor need not even have been present during the offense." *Id.*

Petitioner relied upon *People v. Verlinde*, 123 Cal. Rptr. 2d 322 (Ct. App. 2002), in support of Petitioner's arguments on direct appeal, but the California Court of Appeal found *Verlinde* inapposite. As the California Court of Appeal summarized, defendant in *Verlinde* "was driving her pickup truck while intoxicated and crashed, killing one passenger and seriously injuring the two others." Exh. 8 at 11. Verlinde "was convicted of gross vehicular manslaughter and other counts related to killing and causing injury while driving drunk." *Id.* Evidence produced at Verlinde's trial showed that "[b]oth [Mark] Vessells [another passenger] and Verlinde were intoxicated, and they shared the driving for part of the ride. Verlinde operated the stick shift and the pedals during the entire drive; Vessells took over steering for awhile but Verlinde resumed steering when Vessells said he could not continue." *Id.* at 11–12.

On appeal, Verlinde argued that Vessells "was an accomplice to the drunk driving counts as a matter of law and that the jury should have been so instructed." *Id.* at 11. The state appellate court "rejected the argument that Vessells was an aider and abettor *as a matter of law*," but found

8

Case No. 14-CV-05178-LHK
ORDER DENYING AMENDED PETITION FOR WRIT OF HABEAS CORPUS

"that the evidence raised the potential for aiding and abetting liability and that the jury should have been instructed to make that determination." *Id.* at 12.  As the *Verlinde* court observed, "[o]ne reasonable inference to draw from this [factual] scenario was that Vessells was encouraging an intoxicated Verlinde to drive, which would support aider and abettor liability of the misdemeanor crime of driving under the influence." *Verlinde*, 123 Cal. Rptr. 2d at 334.  The *Verlinde* court further noted that "[o]rdinarily, accomplice liability under a coperpetrator theory or an aider and abettor theory is not associated with the crime[] of gross vehicular manslaughter . . . because of the individual nature of the act and mental state involved.  However, this case presents an unusual factual situation with shared driving by two intoxicated individuals." *Id.* at 332.  Under the facts presented, "accomplice liability for these crimes is *possible.*" *Id.* (emphasis added).

According to Petitioner, *Verlinde* stood "for the propositions that (1) the general rule is no aider and abettor liability for these crimes, and (2) the exception is a situation where both individuals are shown to have driven the vehicle." Exh. 8 at 13.  Thus, because there was "no evidence that [Petitioner's] hands were on the wheel or his feet were on the pedals, he [could] not be guilty of aiding and abetting." *Id.*

The California Court of Appeal, however, found this reading of *Verlinde* to be "overly narrow." *Id.* at 13.  "Although the *Verlinde* shared-driving scenario is one set of facts giving rise to potential aider and abettor liability, it is not the only one and nothing in *Verlinde* purports to limit aider and abettor liability to shared driving." *Id.*  Instead, "[t]he required elements for aiding and abetting are that a defendant intended to, and did in fact, aid, facilitate, promote, encourage, or instigate the perpetrator's commission of the offense." *Id.*  The *Verlinde* decision did not, in other words, impose a shared driving or physical control requirement.

The state appellate court went on to conclude that the jury in the instant case "could have inferred that [Petitioner] encouraged Swayne to drive and facilitated Swayne's criminal conduct by creating a situation in which it was highly unlikely that the car could be driven safely." *Id.*  Several witnesses had testified that Petitioner sat in the driver's seat, while Swayne sat on top of Petitioner's legs.  "This was more than a mere agreement to assist Swayne in driving, and

9
Case No. 14-CV-05178-LHK
ORDER DENYING AMENDED PETITION FOR WRIT OF HABEAS CORPUS

[Petitioner] was no ordinary passenger." *Id.* Thus, whether or not Petitioner "exerted any actual physical control over the Lexus or by his conduct aided, facilitated, promoted, encouraged, or instigated the commission of the charged offenses were questions for the jury," and the state trial court "properly instructed on aider and abettor liability." *Id.*

The California Court of Appeal's reasoning on Petitioner's direct appeal was neither contrary to nor an unreasonable application of clearly established federal law. As the California Court of Appeal noted, nothing in *Verlinde* or its progeny compels the conclusion that the jury should have been given a shared driving or physical control instruction.

Moreover, even if there were any ambiguity as to the breadth of aiding and abetting liability for the crimes at issue, the U.S. Supreme Court has "repeatedly held that a state court's interpretation of state law, *including one announced on direct appeal of the challenged conviction*, binds a federal court sitting in habeas corpus." *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) (internal quotation marks omitted) (emphasis added). Here, the California Court of Appeal has determined that Petitioner's reading of *Verlinde* is "overly narrow" and that "nothing in *Verlinde* purports to limit aider and abettor liability to shared driving" under California law. Exh. 8 at 13. That interpretation is binding upon this Court. Under this interpretation, Petitioner's arguments—that the jury was "erroneously instruct[ed]" as to aiding and abetting liability and that the state trial court should have provided a pinpoint jury instruction, Pet. at 13—lack merit.

As a final point, Petitioner's citation in his amended habeas petition to the *In re Queen T.*, 17 Cal. Rptr. 2d 922 (Ct. App. 1993), and *In re F.H.*, 122 Cal. Rptr. 3d 43 (Ct. App. 2011) decisions is unavailing.

In *In re Queen T.*, for instance, the California Court of Appeal concluded that "steering a vehicle, without controlling the accelerator or brakes, constitutes 'driving'" for purposes of liability for the crime of "driving under the influence of alcohol and causing injury." 17 Cal. Rptr. 2d at 922. Similarly, in *In re F.H.*, the California Court of Appeal determined that "a passenger who grabs the steering wheel" is "'driving' the car within the meaning of the [California] Vehicle Code." 122 Cal. Rptr. 3d at 45–46. If anything, these decisions point in Respondent's favor. In

10

both cases, the California Court of Appeal held that liability under the California Vehicle Code should be interpreted broadly, and that even a momentary grabbing of the steering wheel could be considered driving under California law. Neither *In re Queen T.* nor *In re F.H.* supports the narrow interpretation of "driving" advanced by Petitioner.

In sum, case law interpreting the California criminal provisions at issue does not support Petitioner's arguments. Petitioner's request for habeas relief because of jury instructional error is therefore DENIED.

### B. Sufficiency of the Evidence

Petitioner also seeks habeas relief under *Jackson v. Virginia*, 443 U.S. 307 (1979), arguing that "the record here has no evidence to persuade a rational trier of fact beyond a reasonable doubt that [P]etition was driving the vehicle." Pet. at 13.

"*Jackson* claims face a high bar in federal habeas proceedings because they are subject to two layers of judicial deference." *Coleman v. Johnson*, 132 S. Ct. 2060, 2062 (2012) (per curiam). "First, on direct appeal, it is the responsibility of the jury—not the court—to decide what conclusions should be drawn from evidence admitted at trial. A reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury." *Id.* (internal quotation marks omitted). "And second, on habeas review, a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was objectively unreasonable." *Id.* (internal quotation marks omitted).

Here, the California Court of Appeal observed that Petitioner "sat in the driver's seat and allowed Swayne, who was intoxicated, to sit on his lap, and thereby facilitated her grossly negligent behavior of driving while intoxicated and squeezed into a space from which she could not have safely driven the vehicle." Exh. 8 at 16. Moreover, "[t]he vehicle traveled over four miles, passed through at least seven controlled intersections, and was traveling between 44 and 50 miles per hour at the time of impact. There were no skid marks, indicating that no one tried to

11

brake after failing to navigate the curve in the road." *Id.* at 16–17. Based on this evidence, the California Court of Appeal determined that "the jury reasonably could [have] f[ound] that [Petitioner] was guilty of the[] [charged] offenses under an aiding and abetting theory." *Id*. Moreover, because Petitioner "was in the driver's seat of his own car," the jury "could also reasonably have inferred that [Petitioner] operated the vehicle and thus was guilty as a direct perpetrator." *Id.* at 17. Pursuant to these findings, the California Court of Appeal rejected Petitioner's sufficiency of the evidence argument on direct appeal.

The California Court of Appeal's decision was not objectively unreasonable. The prosecution produced substantial evidence at trial establishing Petitioner's culpability. This evidence included witness testimony from eyewitnesses, forensics experts, police officers, and traffic investigators. This evidence presented a consistent narrative concerning Petitioner's conduct before, during, and after the incident. Accordingly, Petitioner's request for habeas relief because there was insufficient evidence to support Petitioner's convictions is DENIED.

## IV.   CONCLUSION

For the foregoing reasons, Petitioner's amended petition for a writ of habeas corpus is DENIED with prejudice. No certificate of appealability shall issue, as Petitioner has not made a substantial showing of the denial of a constitutional right. The Clerk shall close the file.

**IT IS SO ORDERED.**

Dated: July 28, 2016

_____
LUCY H. KOH
United States District Judge

12
Case No. 14-CV-05178-LHK
ORDER DENYING AMENDED PETITION FOR WRIT OF HABEAS CORPUS